Steven C. Smith (4508)
Kipp S. Muir (15400)
SMITH LC
4 Park Plaza, Suite 1050
Irvine, California 92614
(949) 416-5000
ssmith@smith-lc.com
kmuir@smith-lc.com

Aaron R. Harris (12111)
SMITH LC
2912 W. Executive Pkwy, Suite 240
Lehi, Utah 84043
(385) 309-0000
aharris@smith-lc.com

Stephen C. Biggs (17850)
SMITH LC
40 N Center St., Suite 104
Mesa, Arizona 85201
(480) 361-8575
sbiggs@smith-lc.com

*Attorneys for Plaintiffs*
dōTERRA Holdings, LLC and dōTERRA International, LLC

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| dōTERRA HOLDINGS, LLC, a Utah limited liability company and dōTERRA INTERNATIONAL, LLC, a Utah limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> zKouty, a person or business entity of unknown type, US1222, a person or business entity of unknown type, <br><br> Defendants. | **COMPLAINT** <br><br> JURY DEMAND <br><br> Case No. <br><br> Judge: |

1

Plaintiffs dōTERRA Holdings, LLC and dōTERRA International, LLC (collectively "Plaintiffs" or "dōTERRA") allege and complain as follows:

## PARTIES

1.      Plaintiff dōTERRA Holdings, LLC is a Utah limited liability company with its principal place of business at 389 South 1300 West, Pleasant Grove, Utah 84062.

2.      Plaintiff dōTERRA International, LLC is a Utah limited liability company with its principal place of business at 389 South 1300 West, Pleasant Grove, Utah 84062.

3.      zKouty ("zKouty") is a person or business entity of unknown type that advertises and sells products to the public on the website www.amazon.com (the "Website"). zKouty's products listed through the Website are accessible and available for purchase in the state of Utah, and zKouty has in fact sold the infringing and counterfeit goods that are the subject of this action to one or more Utah customers.

4.      US1222 ("US1222") is a person or business entity of unknown type. US1222 is listed on the packaging slip as the person who shipped the infringing and counterfeit goods that were purchased zKouty through the Website that are the subject matter of this action. Based on these circumstances, dōTERRA believes and therefore alleges that US1222 helps list, advertise, sell, and distribute the products zKouty sells through the Website, including the infringing and counterfeit goods that are the subject matter of this action. US1222 is therefore personally liable for the causes of action alleged herein based on his own conduct, and zKouty bears respondeat superior liability for US1222's wrongful acts because US1222 was acting as an agent of zKouty with respect to the conduct alleged herein and that conduct was undertaken within the course and scope of US1222's agency for zKouty.

2

5.     zKouty and US1222 are referred to collectively in this Complaint as "Defendants." There may be other persons presently unknown to dōTERRA who are also liable for the conduct and Lanham Act violations alleged herein, and dōTERRA reserves the right to amend this Complaint under Federal Rule of Civil Procedure 15, or to seek an order under Federal Rule of Civil Procedure 21 adding additional defendants, if dōTERRA later discovers the existence and identity of other persons who participated in the Lanham Act violations alleged herein.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1338 because the claims asserted by dōTERRA against Defendants arise under the federal Lanham Act

7.     This Court has personal jurisdiction over Defendants pursuant to the Utah Nonresident Jurisdiction Act, Utah Code Ann. § 78B-3-205. Each of the Defendants, in person or through an agent, transacted business within the state of Utah and contracted to supply goods in the state of Utah by offering to sale and selling the infringing and counterfeit goods that are the subject matter of this action to one or more Utah residents. Additionally, each of the Defendants, in person or through an agent, caused injury to dōTERRA in the state of Utah through the statutory violations and tortious acts alleged in this complaint. Defendants counterfeit dōTERRA products in violation of dōTERRA's trademark and other federally-protected rights; they advertise these counterfeit products using dōTERRA's registered trademarks and its distinctive trade dress (or confusingly similar marks and trade dress) through at least the Website—an online marketplace that markets and sells products to Utah residents; and they sell and distribute these counterfeit products to Utah residents. Defendants' conduct is intended to harm dōTERRA, which has its

3

principal place of business in Utah; the brunt of that harm is felt by dōTERRA in Utah; and Defendants knew or should have known that their conduct would cause dōTERRA harm, the brunt of which dōTERRA would suffer in Utah.

8.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in Utah.

## FACTUAL BACKGROUND

9.    dōTERRA began offering products in 2008 throughout the United States. dōTERRA's products are principally sold to consumers through independent distributors or through dōTERRA's company website. Currently, dōTERRA has millions of distributors located throughout the United States and worldwide.

10.    dōTERRA places a high value on the quality of its essential oil and other personal care products.  dōTERRA partners with responsible artisans around the world to grow high quality plants. Similarly, dōTERRA partners with skilled distillers and scientists to ensure its products are of supreme quality.

11.    dōTERRA sells a variety of individual essential oils and essential oil blends, nutritional supplements, and other personal care products.

12.    dōTERRA owns the following trademarks relevant to this action, which are registered on the Principal Register of the United States Patent and Trademark Office (collectively, "the dōTERRA Marks"):

   a.  The standard character mark "DEEP BLUE" for "Analgesic balm; Analgesic preparations;  Topical  Analgesics."  (U.S.  Trademark  Registration  No.

4

6,603,590 registered on December 28, 2021, with a first-use-in-commerce date of April 25, 2008.)

b.  The standard character mark "DEEP BLUE" for "Essential oils; Essential oils for household use; Essential oils for personal use; Massage oil; Massage oils; Natural essential oils; Aromatherapy oils; Bath oils; Body oils; Cosmetic oils; Cosmetic oils for the epidermis; Essential oils for use in manufacturing of gel caps and other dietary supplements; Essential oils for use in the manufacture of scented products; Oils for toiletry purposes; Skin and body topical lotions, creams and oils for cosmetic use; Oils for perfumes and scents; Peppermint oil; Perfume oils." (U.S. Trademark Registration No. 3,617,243 registered on May 5, 2009, and amended December 3, 2019, with a first-use-in-commerce date of April 25, 2008.)

c.  The standard character mark "DOTERRA" for "Analgesic balm; Analgesic preparations; Topical analgesics." (U.S. Trademark Registration No. 6,175,386 registered on October 13, 2020, with a first-use-in-commerce date of August 10, 2011.)

d.  The standard character mark "DOTERRA" for "Mentholated ointment for medical use." (U.S. Trademark Registration No. 6,175,385 registered on October 13, 2020, with a first-use-in-commerce date of September 11, 2015.)

e.  The standard character mark "DOTERRA" for "Aromatherapy oils; Bath oils; Body oils; Cosmetic oils; Cosmetic oils for the epidermis; Essential oils; Essential oils for flavoring beverages; Essential oils for food flavorings;

Essential oils for household use; Essential oils for personal use; Essential oils for use in manufacturing of gelcaps and other dietary supplements; Essential oils for use in the manufacture of scented products; Lavender oil; Massage oils; Natural essential oils; Oils for cleaning purposes; Oils for toiletry purposes; Peppermint oil; Skin and body topical lotions, creams and oils for cosmetic use; Food flavorings prepared from essential oils; Massage oil; Perfume oils; Tanning oils; Aromatherapy body care products, namely, body lotion, shower gel, cuticle cream, shampoo, conditioner, non-medicated lip balm, soap, body polish, body and foot scrub and non-medicated foot cream; Beauty creams for body care; Deodorants for body care; Non-medicated skin care preparations, namely, creams, lotions, gels, toners, cleaners and peels; Skin clarifiers; Skin cleansers; Skin creams; Skin lotions; Skin moisturizer; Skin toners; Soaps for body care; Wrinkle removing skin care preparations; Hair shampoos and conditioners; Hair styling preparations; Fragrances." (U.S. Trademark Registration No. 3,641,123 registered on June 16, 2009, with a first-use-in-commerce date of April 29, 2008.)

13.    Since the inception of their use, the dōTERRA Marks have been used by dōTERRA as a source identifier for dōTERRA's high-quality goods. dōTERRA has extensively used the dōTERRA Marks in the United States, and throughout the world, to identify dōTERRA as the source of dōTERRA's goods and services. dōTERRA has made significant efforts to advertise, market, and promote the dōTERRA Marks in the United States and, as a result, the marks have

become well recognized by consumers as distinctive symbols and source identifiers of dōTERRA's goods and services.

14.     dōTERRA uses both the DOTERRA and DEEP BLUE marks to advertise, promote, and sell a product called Deep Blue® Rub, which includes dōTERRA's proprietary essential oil blend called Deep Blue®. A picture of a genuine article of dōTERRA's Deep Blue® Rub product, including the distinctive, nonfunctional trade dress used by doTERRA during the relevant time period in connection with that product, is shown below:



15.     The DOTERRA mark is a "famous mark" within the meaning of 15 U.S.C. § 1125(c) that is inherently distinctive and that has acquired distinctiveness through dōTERRA's extensive use of the mark to identify dōTERRA as the source of the goods it sells under the mark. dōTERRA has been advertising its goods under the DOTERRA mark since 2008, and the mark has received extensive publicity from third parties since that time, leading to wide recognition of

the mark among the general consuming public of the United States as a designation of the source of dōTERRA's goods. That recognition is evidenced by the nationwide advertising and marketing that dōTERRA and its independent distributors conduct using the DOTERRA mark as a source identifier for dōTERRA's goods, including on dōTERRA's company website (https://www.doterra.com/US/en), in social media posts, in print and digital media advertisements and marketing materials, and through the person-to-person interactions between dōTERRA's independent distributors and their acquaintances and customers. Numerous third parties—including traditional media outlets, social media influencers, bloggers, and others—recognize and publicize the DOTERRA mark as a source identifier for dōTERRA's high-quality goods. And in the past year alone, dōTERRA has sold over 1.5 million units of its Deep Blue® products in the United States using the DOTERRA mark and the DEEP BLUE mark as source identifiers for those goods. In the last year, dōTERRA's sales in the United States of its 4-ounce Deep Blue® Rub product have generated millions of dollars in revenue for dōTERRA.

16.     Defendants, through the Website, promote, advertise, market, and sell a counterfeit of dōTERRA's 4-ounce Deep Blue® Rub product. (*See* **Exhibit 1**.)

17.     On August 2, 2022, Defendants had a listing on the Website for "Deep Blue Rub Essential Oil Blend Blue 4 oz (NEW)." That product was purchased in Utah by a Utah resident and shipped to Utah.

18.     Pictures of the product and its packaging that Defendants shipped are attached hereto as **Exhibit 2**. The appearance of Defendants' product and its packaging mimics dōTERRA's use of the dōTERRA Marks and dōTERRA's distinctive trade dress on the packaging used by dōTERRA for its Deep Blue® Rub product, including Defendants' prominent use of both the

DOTERRA and DEEP BLUE marks to suggest to consumers that dōTERRA is the source of the Defendants' product.

19.     Defendants' product, however, was a counterfeit and is not a genuine dōTERRA product.

20.     For example, Defendants' product purports to have a lot number 220429. But dōTERRA's internal records, which are kept in the ordinary course of business, confirm that dōTERRA has never manufactured or sold a Deep Blue® Rub product with the purported lot number 220429.

21.     dōTERRA's Quality Assurance department is responsible for determining whether the products it manufactures and distributes comply with dōTERRA's specifications and internal quality controls. If a product deviates from those specifications or internal quality controls, those deviations are noted on an internal log. dōTERRA's log does not show any deviations in dōTERRA's genuine product where the lot number was misapplied as 220429, the number associated with Defendants' product.

22.     Defendants' use of the dōTERRA Marks as source identifiers on Defendants' "Deep Blue Rub" product was a knowing and intentional act designed to mislead consumers into believing that dōTERRA is the source of Defendants' goods in order to unlawfully take advantage of and unfairly trade on dōTERRA's goodwill, the goodwill of the famous and inherently distinctive DOTERRA mark, and the goodwill of the DEEP BLUE mark, which dōTERRA has built up through its extensive use of the DOTERRA and DEEP BLUE marks for over a decade throughout the United States (and the world) as source identifiers for dōTERRA's high-quality goods.

23. On information and belief, Defendants' counterfeit "Deep Blue Rub" product is of inferior quality to dōTERRA's genuine Deep Blue® Rub product. By marketing and selling a counterfeit product of inferior quality to dōTERRA's genuine product, Defendants are causing foreseeable and substantial harm to dōTERRA's reputation and business goodwill, and to the value of the dōTERRA Marks by associating Defendants' inferior goods with the dōTERRA Marks, which stand for the highest quality products in the essential oil industry.

24. Defendants' use of the dōTERRA Marks is without dōTERRA's permission or consent. Contrary to the statements on Defendants' product, Defendants' product was not "Manufactured exclusively for dōTERRA Intl, LLC."

25. On information and belief, Defendants have advertised, offered to sell, sold, and distributed other counterfeit products in violation of dōTERRA's rights.

26. Defendants' infringement of the dōTERRA Marks, counterfeiting of dōTERRA's goods and marks, and false advertising of its counterfeit goods as genuine dōTERRA products using counterfeited marks wrongly diverts web traffic and web users who are searching for genuine dōTERRA products to Defendants' products. Defendants' conduct falsely leads consumers to believe that Defendants' counterfeit products come from the same source as dōTERRA's genuine products, to the direct and substantial detriment of dōTERRA.

27. Defendants' use of the dōTERRA Marks to advertise, offer for sale, distribute, and sell Defendants' competing goods constitutes an infringement of dōTERRA's registered trademarks. Defendants' use of the dōTERRA Marks to sell competing products is likely to cause consumer confusion and a false association between Defendants' goods and dōTERRA's goods, falsely leading consumers to believe the goods emanate from the same source: dōTERRA.

28.     To address the irreparable harm caused by Defendants' conduct, dōTERRA seeks, among other things, a preliminary and permanent injunction enjoining Defendants' wrongful and unlawful use of the dōTERRA Marks and any confusingly similar marks to sell, offer for sale, distribute, or advertise Defendants' competing products, and dōTERRA seeks to recover damages for the harm Defendants' wrongful and unlawful conduct has already caused and all other remedies authorized by law for Defendant's wrongful and unlawful conduct.

29.     Defendants' continuous, willful, intentional, and unauthorized use of the dōTERRA Marks constitutes an infringement of dōTERRA's trademark rights.  Defendants should not be permitted to trade off of the dōTERRA Marks, which have acquired significant goodwill and consumer recognition in the essential oil and personal care industry. Defendants are unlawfully using the dōTERRA Marks to directly and unfairly compete with dōTERRA.

30.     Accordingly, Defendants should be preliminarily and permanently enjoined from using the dōTERRA Marks, or any confusingly similar marks, in connection with the sale, offer to sell, distribution, or advertisement of essential oils, personal care products, or related goods.  In addition, Defendants are liable for damages caused by their past infringements.

**COUNT I**

**TRADEMARK INFRINGEMENT**
**VIOLATION OF 15 U.S.C. § 1114(1)**

31.     dōTERRA realleges and incorporates by reference paragraphs 1 through 30 of this Complaint, as if fully set forth herein.

32.     The dōTERRA Marks are valid, protectable trademarks.

33.     dōTERRA owns the dōTERRA Marks. dōTERRA has obtained a certificate of registration issued by the United States Patent and Trademark Office for each of the dōTERRA

Marks, and dōTERRA's first use of each of the dōTERRA Marks in commerce predates any use Defendants have made of the dōTERRA Marks in commerce.

34.     As alleged herein, without dōTERRA's consent, Defendants used in commerce one or more reproductions, counterfeits, copies, or colorable imitations of dōTERRA's federally-registered DOTERRA and DEEP BLUE trademarks in connection with the sale, offering for sale, distribution, and advertisement of Defendants' goods—including Defendants' counterfeit "Deep Blue Rub" product—knowing those uses were likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of Defendants' goods by leading those consumers to believe that dōTERRA is the source of Defendants' goods, when it is not.

35.     As alleged herein, without dōTERRA's consent, Defendants knowingly applied one or more reproductions, counterfeits, copies, or colorable imitations of dōTERRA's federally-registered DOTERRA and DEEP BLUE trademarks to labels, prints, packages, wrappers, receptacles, and/or advertisements intended to be used in commerce in connection with the sale, offering for sale, distribution, and advertising of Defendants' goods—including Defendants' counterfeit "Deep Blue Rub" product—and Defendants knew their use of their reproductions, counterfeits, copies, or colorable imitations of dōTERRA's federally-registered DOTERRA and DEEP BLUE trademarks in the manner described above was likely to cause confusion, cause mistake, or deceive ordinary consumers regarding the source, sponsorship, affiliation, or approval of Defendants' goods by leading those consumers to believe that dōTERRA is the source of Defendants' goods, when it is not.

36.     dōTERRA's federally-registered trademarks for DOTERRA and DEEP BLUE cover the types of goods that Defendants sold, offered for sale, distributed, and advertised in

commerce using reproductions, counterfeits, copies, or colorable imitations of dōTERRA's federally-registered DOTERRA and DEEP BLUE trademarks—including but not limited to Defendants' counterfeit "Deep Blue Rub" product.

37.    Defendants intentionally used dōTERRA's Marks, knowing they were counterfeit marks (as defined in 15 U.S.C. § 1116(d)), in connection with the sale, offering for sale, and distribution of their goods—including the Defendants' counterfeit "Deep Blue Rub" product. Thus, Defendants' use of the counterfeit DOTERRA and DEEP BLUE marks was willful, such that statutory damages of up to $2 million per counterfeit mark per type of goods sold, offered for sale, or distributed by Defendants should be available to dōTERRA (at its election) under 15 U.S.C. § 1117(c) for Defendants' use of those counterfeit marks in connection with the sale, offering for sale, or distribution of Defendants' goods, including Defendants' counterfeit "Deep Blue Rub" product.

38.    As a direct and proximate result of Defendants' infringement, dōTERRA has been and is likely to continue to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues, lost profits, diminished goodwill, and other damages to be proved at trial.

39.    Defendants' wrongful conduct alleged herein constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114. dōTERRA is entitled to the remedies provided by the Lanham Act for such violation, including recovery of Defendants' profits, any damages sustained by dōTERRA, and the costs of this action. *See* 15 U.S.C. § 1117(a).

40.    Because Defendants' violations of Section 32 of the Lanham Act involve the use of a counterfeit mark or designation that Defendants intentionally used in connection with the sale,

offering for sale, and distribution of Defendants' goods, knowing the mark was a counterfeit mark, dōTERRA is entitled to recover treble Defendants' profits or dōTERRA's damages, whichever amount is greater, together with reasonable attorneys' fees and prejudgment interest. *See* 15 U.S.C. § 1117(b).

41.    dōTERRA is being irreparably injured by the unlawful acts of Defendants. dōTERRA has no adequate remedy at law for Defendants' Lanham Act violations because the dōTERRA Marks are unique and represent to the public dōTERRA's identity, reputation, and goodwill, such that damages alone cannot fully compensate dōTERRA for Defendants' misconduct.

42.    Because of Defendants' intentional and willful conduct, dōTERRA is entitled to the entry of a preliminary and permanent injunction enjoining Defendants from infringing the dōTERRA Marks by (a) using any of those marks—or any reproduction, counterfeit, copy, or colorable imitation of the marks—in connection with the sale, offering for sale, distribution, or advertising of any goods or services covered by dōTERRA's registered trademarks; or (b) reproducing, counterfeiting, copying, or making a colorable imitation of any of the dōTERRA Marks and applying such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of any goods or services covered by dōTERRA's registered trademarks. The injunction should also prohibit the importation into the United States of any of Defendants' goods that are marked or labeled using the dōTERRA Marks, as provided by 15 U.S.C. § 1116(b).

43.     Under 15 U.S.C. § 1116(d)(1)(A), dōTERRA is entitled to an order providing for the seizure of any and all of Defendants' goods involved in Defendants' infringement of the dōTERRA Marks through the use of a counterfeit mark—including but not limited to Defendants' counterfeit "Deep Blue Rub" product—and any and all records documenting the manufacture, sale, or receipt of those goods.

44.     Under 15 U.S.C. § 1118, dōTERRA is entitled to an order requiring Defendants to deliver up and destroy all labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendants' possession bearing any of the dōTERRA Marks.

45.     This case is exceptional within the meaning of 15 U.S.C. §1117(a), and dōTERRA is entitled to recover its attorney's fees and costs in addition to any other remedies allowed by law.

## COUNT II

### FEDERAL UNFAIR COMPETITION
### VIOLATION OF 15 U.S.C. § 1125(a)

46.     dōTERRA realleges and incorporates by reference paragraphs 1 through 45 of this Complaint, as if fully set forth herein.

47.     As alleged herein, Defendants used in commerce and on or in connection with their goods and the containers for their goods—including their counterfeit "Deep Blue Rub" product—one or more words, terms, names, symbols, devices, or a combination thereof that is likely to cause confusion, cause mistake, or to deceive an ordinary consumer as to the origin, sponsorship, or approval of Defendants' goods by dōTERRA, in violation of 15 U.S.C. § 1125(a).

48.     As alleged herein, Defendants used in commerce and on or in connection with their counterfeit "Deep Blue Rub" product and the container for that product trade dress that is

confusingly similar to the distinctive, nonfunctional trade dress that dōTERRA uses on its authentic Deep Blue® Rub product, in violation of 15 U.S.C. § 1125(a).

49.    Defendants use the dōTERRA Marks (or confusingly similar marks) to advertise and promote their competing products, including Defendants' counterfeit "Deep Blue Rub" product, in an effort to confuse or deceive ordinary consumers and cause them to mistakenly believe that dōTERRA is the source of or is affiliated with Defendants' goods.

50.    In connection with the marketing, sale, offering for sale, advertisement, and distribution in commerce of their counterfeit "Deep Blue Rub" product, Defendants used a false or misleading description or representation of fact when they printed on the label for the container of that counterfeit "Deep Blue Rub" product that it was "Manufactured exclusively for dōTERRA Intl, LLC," when in fact the product was not manufactured for dōTERRA International, LLC, but for Defendants or someone acting in concert with Defendants. This false or misleading description or representation of fact was likely to cause confusion, cause mistake, or deceive ordinary consumers into falsely believing that Defendants' goods are associated with, affiliated with, connected to, or originate from dōTERRA. This false or misleading description or representation of fact in Defendants' commercial advertising and promotion of its products also misrepresents the nature and characteristics of Defendants' goods by suggesting they were manufactured for dōTERRA and, implicitly, meet dōTERRA's high standard of quality.

51.    Through the unlawful and misleading conduct alleged herein, Defendants are unfairly competing with dōTERRA by attempting to pass off their goods as the goods of dōTERRA, in violation of 15 U.S.C. § 1125(a).

52.     As a direct and proximate result of Defendants' acts of unfair competition in violation of 15 U.S.C. § 1125(a) alleged herein, dōTERRA has been and is likely to continue to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues, lost profits, diminished goodwill, and other damages to be proved at trial.

53.     As a remedy for Defendants' acts of unfair competition in violation of 15 U.S.C. § 1125(a) alleged herein, dōTERRA is entitled to the remedies provided by the Lanham Act for such violations, including recovery of Defendants' profits, three times the amount of any damages sustained by dōTERRA, and the costs of this action. *See* 15 U.S.C. § 1117(a).

54.     dōTERRA is being irreparably injured by Defendants' acts of unfair competition in violation of 15 U.S.C. § 1125(a), and dōTERRA has no adequate remedy at law for those violations. Because dōTERRA is likely to succeed on the merits of its claims against Defendants for their unfair competition in violations of 15 U.S.C. § 1125(a), dōTERRA is entitled to the entry of a preliminary and permanent injunction enjoining Defendants from using in commerce on or in connection with any goods or services, or any container for goods, any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which (a) is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants' goods with dōTERRA, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by dōTERRA; or (b) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of Defendants' goods, services, or commercial activities. The prohibitions imposed on Defendants by such an injunction would include, but not be limited to, prohibiting Defendants from using dōTERRA's

trade dress (or a confusingly similar trade dress) on Defendants' products and from falsely claiming that Defendants' products are manufactured for dōTERRA.

55.    Unless enjoined by the Court, Defendants will continue to compete unfairly with dōTERRA. The resulting irreparable injury to dōTERRA's business, including its goodwill and reputation, requires preliminary and permanent injunctive relief to prevent Defendants' continued unfair competition, and to ameliorate and mitigate dōTERRA's injuries.

56.    Under 15 U.S.C. § 1118, dōTERRA is entitled to an order requiring Defendants to deliver up and destroy all labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendants' possession that incorporates trade dress that is confusingly similar to the distinctive, nonfunctional trade dress that dōTERRA uses on its authentic Deep Blue® Rub product, or that falsely claims Defendants' goods are manufactured for dōTERRA.

57.    This case is exceptional within the meaning of 15 U.S.C. §1117(a), and dōTERRA is entitled to recover its attorney's fees and costs, in addition to any other remedies provided by law.

## COUNT III

## FALSE ADVERTISING
## VIOLATION OF 15 U.S.C. § 1125(a)(1)(B)

58.    dōTERRA realleges and incorporates by reference paragraphs 1 through 57 of this Complaint, as if fully set forth herein.

59.    Defendants advertise and promote their products as being dōTERRA's genuine products and being "Manufactured exclusively for dōTERRA Intl, LLC." These statements, and those similar to it, by Defendants are materially false and misleading because they misrepresent the nature, characteristics, and origin of Defendants' products, in violation of section 43(a)(1)(B)

18

of the Lanham Act, codified at 15 U.S.C. § 1125(a)(1)(B), by falsely suggesting that Defendants'

counterfeit "Deep Blue Rub" product was manufactured for dōTERRA and is of the same high

quality and character as dōTERRA's brand of products.

60.    Defendants do not manufacture any products for dōTERRA, and statements by

Defendants that suggest or imply otherwise are false and misleading, and such statements cause

injury to dōTERRA.

61.    Defendants false and misleading claim that their counterfeit "Deep Blue Rub"

product is manufactured exclusively for dōTERRA constitutes commercial advertising or

promotion by a party who is in commercial competition with dōTERRA for the purpose of

influencing consumers to buy Defendants' goods.  Defendants' false statements in this regard on

the Website and on Defendants' product label and packaging are disseminated to the purchasing

public in interstate commerce.

62.    As a remedy for Defendants' acts of false advertising in violation of 15 U.S.C. §

1125(a)(1)(B) alleged herein, dōTERRA is entitled to the remedies provided by the Lanham Act

for such violations, including recovery of Defendants' profits, three times the amount of any

damages sustained by dōTERRA, and the costs of this action. *See* 15 U.S.C. § 1117(a).

63.    Defendants' wrongful acts cannot be fully compensated by money damages, and

dōTERRA will suffer irreparable injury if Defendants' conduct is not enjoined. dōTERRA is,

therefore, entitled to preliminary and permanent injunctive relief prohibiting Defendants from

using in commerce on or in connection with any goods or services, or any container for goods, any

word, term, name, symbol, or device, or any combination thereof, or any false designation of

origin, false or misleading description of fact, or false or misleading representation of fact that, in

commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of Defendants' goods, services, or commercial activities. The prohibitions imposed on Defendants by such an injunction would include, but not be limited to, prohibiting Defendants from falsely claiming that Defendants' products are manufactured for dōTERRA.

64.     Under 15 U.S.C. § 1118, dōTERRA is entitled to an order requiring Defendants to deliver up and destroy all labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendants' possession that falsely claim Defendants' goods are manufactured for dōTERRA.

65.     This case is exceptional within the meaning of 15 U.S.C. §1117(a), and dōTERRA is entitled to recover its attorney's fees and costs, in addition to any other remedies provided by law.

**COUNT IV**

**DILUTION**
**VIOLATION OF 15 U.S.C. § 1125(c)**

66.     dōTERRA realleges and incorporates by reference paragraphs 1 through 65 of this Complaint, as if fully set forth herein.

67.     As alleged herein, the DOTERRA mark is a "famous mark" within the meaning of 15 U.S.C. § 1125(c) that is inherently distinctive and that has acquired distinctiveness through dōTERRA's extensive use of the mark to identify dōTERRA as the source of the goods it sells under the mark. dōTERRA has been advertising its goods under the DOTERRA mark since 2008, and the mark has received extensive publicity from third parties since that time, leading to wide recognition of the mark among the general consuming public of the United States as a designation of the source of dōTERRA's goods.  That recognition is evidenced by the nationwide advertising and marketing that dōTERRA and its independent distributors conduct using the DOTERRA mark

20

as a source identifier for dōTERRA's goods, including on dōTERRA's company website (https://www.doterra.com/US/en), in social media posts, in print and digital media advertisements and marketing materials, and through the person-to-person interactions between dōTERRA's independent distributors and their acquaintances and customers. Numerous third parties— including traditional media outlets, social media influencers, bloggers, and others—recognize and publicize the DOTERRA mark as a source identifier for dōTERRA's high-quality goods. And in the past year alone, dōTERRA has sold over 1.5 million units of its Deep Blue® products in the United States using the DOTERRA mark the DEEP BLUE mark as source identifiers for those goods. In the last year, dōTERRA's sales in the United States of its 4-ounce Deep Blue® Rub product have generated millions of dollars in revenue for dōTERRA.

68.    As alleged herein, after the time when the DOTERRA mark had already become famous, Defendants began misusing the DOTERRA mark in commerce on and in connection with Defendants' goods—including Defendants' counterfeit "Deep Blue Rub" product—in a manner that is likely to cause dilution by blurring or dilution by tarnishment of the famous DOTERRA mark.

69.    Defendants' wrongful acts cannot be fully compensated by money damages, and dōTERRA will suffer irreparable injury if Defendants' conduct is not enjoined. But because the DOTERRA mark is a famous mark, dōTERRA is entitled to preliminary and permanent injunctive relief under 15 U.S.C. § 1125(c)(1) prohibiting Defendants from any further use in commerce of the DOTERRA mark or any confusingly similar mark, regardless of the presence or absence of actual or likely confusion, or competition, or of actual economic injury.

70.     This case is exceptional within the meaning of 15 U.S.C. §1117(a) and dōTERRA is entitled to recover its attorney's fees and costs, in addition to any other remedies provided by law.

## PRAYER FOR RELIEF

**WHEREFORE,** dōTERRA respectfully prays for the following relief against Defendants:

1.     The entry of a preliminary and permanent injunction enjoining Defendants and their officers, directors, shareholders, managers, members, agents, servants, employees, and those persons or entities in active concert or participation with them as follows:

   a.     From infringing the dōTERRA Marks by using any of those marks—or any reproduction, counterfeit, copy, or colorable imitation of the marks—in connection with the sale, offering for sale, distribution, or advertising of any goods or services covered by dōTERRA's registered trademarks.

   b.     From infringing the dōTERRA Marks by reproducing, counterfeiting, copying, or making a colorable imitation of any of the dōTERRA Marks and applying such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of any goods or services covered by dōTERRA's registered trademarks.

   c.     From any further use in commerce of the DOTERRA and DEEP BLUE marks or any confusingly similar marks.

d.     From using in commerce on or in connection with any goods or services, or any container for goods, any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants' goods with dōTERRA, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by dōTERRA.

e.     From using in commerce on or in connection with any goods or services, or any container for goods, any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact that, in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of Defendants' goods, services, or commercial activities.

f.     From using dōTERRA's trade dress (or a confusingly similar trade dress) on Defendants' products.

g.     From falsely claiming that Defendants' products are manufactured for dōTERRA.

h.     From importing into the United States any of Defendants' goods that are marked or labeled using the dōTERRA Marks, as provided by 15 U.S.C. § 1116(b).

i.   From using the dōTERRA Marks or any trademark, service mark, logo, or trade name that is confusingly similar to the dōTERRA Marks in connection with Google or any other Internet search engine.

j.   Requiring Defendants to promptly eliminate any and all false advertising using the dōTERRA Marks or any other confusingly similar marks or designations from all advertising, the Internet, search engines, web sites, and media—including but not limited to online marketplaces, online auctions, newspapers, flyers, coupons, promotions, indoor and outdoor signs, telephone books, telephone directory assistance listings, social media, and mass mailings, all at Defendants' cost.

k.   From passing off any of the goods or services Defendants offer as those of dōTERRA or passing off Defendants' goods as being manufactured for dōTERRA.

l.   Requiring Defendants to file with the Court and to serve upon dōTERRA's counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order.

2.   The entry of an order under 15 U.S.C. § 1116 providing for the seizure of Defendants' "Deep Blue Rub" products and any other goods of Defendants that use a counterfeit of one or more of the dōTERRA Marks.

3.   The entry of an order under 15 U.S.C. § 1118 requiring the delivery and destruction of all labels, signs, prints, packages, wrappers, receptacles, and advertisements in

Defendants' possession bearing the dōTERRA Marks; any goods, labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendants' possession containing a word, term, name, symbol, device, or combination thereof, designation, description, or representation that is found to constitute a violation of 15 U.S.C. § 1125(a); and any goods, labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendants' possession containing a reproduction, counterfeit, copy, or colorable imitation of the DOTERRA famous mark, and all plates, molds, matrices, and other means of making the same.

4.    The entry of an Order:

   a.    Requiring Defendants to provide an accounting of all sales of their "Deep Blue Rub" product and any other goods that were sold, offered for sale, advertised, or distributed in violation of Section 32 or Section 43 of the Lanham Act.

   b.    Awarding dōTERRA the Defendants' profits from all sales of their "Deep Blue Rub" product and any other goods that were sold, offered for sale, advertised, or distributed in violation of Section 32 or Section 43 of the Lanham Act. Judgment should be entered for three times the amount of Defendants' profits, if those profits are greater than dōTERRA's actual damages, as permitted by 15 U.S.C. § 1117(b).

   c.    Awarding dōTERRA three times its actual damages, as permitted by 15 U.S.C. § 1117(a) and (b).

d.      Awarding dōTERRA costs and expenses, including reasonable attorneys' fees, incurred by dōTERRA in connection with this action as provided for by statute or by law, including but not limited to 15 U.S.C. § 1117(a) and (b).

e.      Awarding dōTERRA prejudgment interest at an annual interest rate established under applicable law, including 26 U.S.C. § 6621(a)(2), from the date of service of this Complaint through the date of judgment, as permitted by 15 U.S.C. § 1117(b).

f.      Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, dōTERRA hereby demands a trial by jury in this action for all issues that are triable to a jury.

DATED: August 22, 2022

/s/ Kipp S. Muir
Steven C. Smith
Aaron R. Harris
Stephen C. Biggs
Kipp S. Muir
*Attorneys for dōTERRA Holdings, LLC and dōTERRA International, LLC*